Green, J.
delivered the opinion of the court.
This is an action brought by Beardin against Winchester, for money laid out and expended for the use of the defendant.
From the bill of exceptions, it appears that F. L. McDaniel, Alexander Williams, A. R. Wyne, and O. D. Beardin, on the 29th of January, 1845, executed their bill single, due one day after date, to Isaac P, Parker *248 for two .hundred dollars. McDaniel was the principal, and Williams, Wyne, and Beardin were sureties in the note. On the 2d of February, 1846, Parker brought suit on the note against all the parties, before a justice of the peace. All the defendants were served with process except Wyne, who was not found. The justice gave judgment against the defendants for one hundred and nine dollars and thirty-five cents.
Upon this judgment no execution issued; and Parker, the plaintiff, died. On the 3d of August, 1846, a scire facias issued to revive the judgment in the name of the executors of Parker, and was served on all, except Wyne, who was not found. On the return of the sci. fa. the judgment was revived, the 10th of August, 1846; and the executors of Parker consenting that it should be stayed, George W. Winchester became security for the stay of execution. Neither Williams nor Beardin, the sureties in the note, were present at the time, nor did they desire Winchester to stay the judgment.
After the stay was out, execution issued, which was superseded as to Williams, 25th of May, 1848; and as to Winchester, 3d of June, 1848; and McDaniel being insolvent, Beardin’s property was levied on, and sold, and the execution was satisfied. Beardin, at the date of the said levy, and sale, resided in Missouri.
Having paid said judgment, by operation of the execution, Beardin brings - this suit, to recover the amount so paid, from the security for the stay of execution. A verdict and judgment were rendered for the plaintiff, in the circuit court, from which judgment, the defendant prosecutes this appeal in error to this court.
1. It is insisted by the plaintiff in error, that this is a voluntary payment by Beardin; that if Winchester *249 was bound to pay the money before Beardin was liable, Beardin should have superseded the execution and compelled the plaintiff to make his money out of those who were first liable; and not having done so, the law will not imply a contract on the part of Winchester to repay the money to him.
By the act of 1841-2, ch. 135, sec. 1, it is provided “that when any person, or persons, may be security or endorser for any debtor or debtors, and said debtor or debtors, securities or endorsers, may be sued and judgment rendered against them, .if any person or persons shall stay the same for the length of time given for the stay of execution upon such judgment, such person or persons staying shall be liable, in default of the principal debtor, to pay the debt and costs of said judgment, and the original security or securities, endorser or endorsers, shall be exonerated therefrom, unless the principal debtor and security, in the replevy, shall both become insolvent, or unless such original security or securities, endorser or endorsers, shall have specially joined with such debtor or debtors in procuring such stayor.”
In the case before us, we have seen that Williams and Beardin were original securities for McDaniel; that neither of them was present, or joined with McDaniel in procuring Winchester to become the stayor, and consequently, by the above statute, Winchester was liable to pay the debt, in default of McDaniel, before Beardin, the original security.
The effect of the statute, upon parties thus situated, is, to interpose the stayor before the original surety; and to place such original surety, in the situation of surety for the stayor. For he is only to be liable, if *250 the principal debtor, and the stayor, shall both become insolvent.
The plaintiff in error, Winchester, by failing to pay this money, which he was bound by law to pay, Beardin has been compelled by process of law to’ pay it.
In Story on contracts, section 474, it is said, “where one man is compelled to pay money which another is bound by law to pay, a promise by the latter, is raised by law to reimburse the person paying.” And Chitty says, (Con., 6 ed., 594.) where the “plaintiff is compelled to make a payment of the defendant’s legal debt, in consequence of his neglect or omission to discharge it, the law infers that the defendant requested the plaintiff to make the payment for him, and gives the action for money paid.”
In this case, Beardin, the plaintiff below, has been compelled to pay money, which Winchester was bound by law to pay; and he is therefore, entitled to recover itj in this action, for money paid.
It is urged, that Winchester having obtained a super-sedeas, by which the execution was stopped as to him; that fact, was sufficient ground for Beardin to obtain a supersedeas also, and that not having done so, his payment was not compulsory.
We do not know upon what ground Winchester’s ■application for a supersedeas was made. How could Beardin know that Winchester had no good ground to be released from his liability ? And if Winchester were ■released, as not being liable as stayor, then, the plaintiff 'had a right to make the money out of Beardin’s property. Certainly, Beardin could not have obtained a supersedeas, simply, by stating in his petition that Winchester, the stayor, had superseded the execution as to *251 him. In order to have entitled him to a supersedeas, he would have been required to show that Winchester was liable as stay or.
It cannot be required, that a party who is subjected, by legal proceedings, to pay money, which another is bound by law to pay, shall have exhausted every possible means of litigation, in resisting the payment, before he shall be entitled to his action for money paid.
It has already been suggested that Beardin occupied the relation of surety for Winchester, as the latter, by law, was primarily liable, on failure of the original debtor; and if a surety pays money for his principal, even without suit, he may recover it in an action for money paid.
2. It is next insisted, that the judgment which was ■stayed was void, and therefore, the stayor incurred no liability. The argument is, that, the original warrant was against Wynne, as well as against McDaniel, Williams and Beardin; that it was not served upon Wynne, but that judgment was rendered against him as well as against the others; and that being so rendered, it is void as to Wynne, and therefore, it is argued, it is void as to all the parties.
In the first place, we are not to infer from the judgment of the justice, that Wynne was included in it. The justice writes under the warrant simply, “judgment against the defendants for one hundred and nine dollars and thirty-five cents.”
By the word, “defendants,” is to be understood those persons only on whom process bad been served, and who were before the court.
*252 In the case of Valentine vs. Cooley, (Meigs’ Rep. 818) a sci. fa. was served on a part of the heirs only, and the record showed the “defendants” had demurred, and the demurrer was overruled. The court held, that this appearance, and demurrer by the “defendants,” could not be regarded as an appearance for those who were not served with process. So here, we cannot regard the word “defendants,” as used by the justice, to mean others than those who were before him, by the service of process. Especially should this construction be placed on the word, as we see the justice in issuing the execution, did not include the name of Wynne in it; which he would have done, if he had given judgment against him. There is, therefore, no judgment against Wynne.
But, had judgment been entered against Wynne in terms, although void as to him, it would not have been void as to the other defendants. In the case above referred to of Valentine vs. Cooley, the court say, “as all the parties were not before the court, the judgment against the adults was irregular, and could have been reversed in toto by writ of error. 2 PetersdorfF, 578, Pl., 5. But although erroneous, it was not void, as to those defendants who were properly before the court.”
The remark of the court, in the case of Trousdale and Bugg vs. Donnell, (4 Hum. R., 273,) must be understood in reference to the case before the court. There had been no service on Bugg, and he and Trousdale both appealed. The only question was, whether there was error in the judgment, as to Trousdale. The judgment was certainly erroneous, and was properly reversed. The court must not be understood, by the words used, *253 “void as to Trousdale,” to mean, that it was, as to him, a nullity; but that it was voidable, and liable to be reversed.
3. It is next contended, that as the security for the stay, was entered after the judgment was revived by the executors of Parker, such stay was without authority of law, and created no legal obligation on Winchester to pay this money.
The fourth section of the act of 1842, before referred to, provides, “that in all cases, where any justice of the peace shall hereafter, render a judgment against any one or more defendants, the said justice may receive and enter security for the stay of such judgment, at any time before the same is paid, or execution is issued, with the consent of the plaintiff or his agent, and such security shall be bound in the same manner and to the same extent, as if the judgment had been stayed within the time now prescribed by law.”
In the case before us, no execution had issued before the death of Parker, and when the judgment was revived in the name of the executors, one of them went before the justice of the peace, and agreed that the defendant, McDaniel, might then stay it, and upon this consent of the executor, Winchester became security for the stay. It is a case falling precisely within the letter of the statute. It is no attempt to stay the judgment of revivor, on the ground of that judgment conferring any right to a party, then to give security for the stay. If that were the question, the counsel for the plaintiff in error would be correct. But, this is the stay by consent of the plaintiff, of the original judgment, before execution issued.
We think there is no error in this record, and affirm this judgment.